# United States Bankruptcy Court
## District of Massachusetts

In re
SAFETY MEDICAL SUPPLY
INTERNATIONAL, INC.,
    Debtor

Chapter 11
Case No. 01-15521-JNF

SAFETY MEDICAL SUPPLY
INTERNATIONAL, INC.,

v.

Adv. P. No. 04-1425

GUARDIAN TECH INC.,
BURNS & LEVINSON LLP,
and KATHLEEN P. DWYER,
CHAPTER 11 TRUSTEE,
    Defendants

## MEMORANDUM

### I. INTRODUCTION

The matter before the Court is the Defendants' Joint Motion to Dismiss the Complaint for Declaratory Judgment filed by the Debtor, Safety Medical Supply International, Inc. ("SMSI"). Pursuant to their Motion, the Defendants, Guardian Tech Inc. ("GTI"), formerly known as ReTrac Medical, Inc. ("ReTrac") and Burns & Levinson LLP ("B&L") (collectively, the "Defendants"), seek dismissal of the above-captioned adversary

1

proceeding on the ground of lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1), made applicable to this proceeding by Fed. R. Bankr. P. 7012(b). Specifically, the Defendants contend that the Debtor's Third Amended Plan of Reorganization (the "Plan") has long since been confirmed, thereby depriving this Court of jurisdiction except as to matters pertaining to the implementation and execution of the Plan. The Defendants also maintain that SMSI's claims against GTI and B&L have nothing to do with the implementation and execution of the Plan, and, if it were to prevail on its claims against the Defendants, any recovery would have no impact on the creditors of SMSI. Alternatively, the Defendants request this Court to abstain.

For the reasons set forth below and because the Defendants have filed Demands for a Jury Trial on all Issues Triable to a Jury, this Court shall abstain from this proceeding.

## II. BACKGROUND

SMSI filed a voluntary Chapter 11 petition on July 9, 2001. Less than one year later, on May 2, 2002, the Court granted the "Assented to Motion of United States Trustee to Appoint a Chapter 11 Trustee," and one day later appointed Kathleen P. Dwyer the Chapter 11 Trustee.

During the Chapter 11 case, SMSI entered into various agreements with GTI and its predecessor, ReTrac. These agreements included a License Agreement, dated October 31, 2001, which this Court approved on December 13, 2001, and which was amended on March 16, 2002 and November 14, 2002; a Settlement Agreement dated May 21, 2003; a Supplemental Settlement Agreement among the Trustee, SMSI & ReTrac, dated June 3,

2003; and a Confirmation Agreement dated September 30, 2003.

On September 30, 2003, SMSI obtained confirmation of its Plan in which the Trustee was designated the Disbursing Agent. SMSI entered into a loan agreement with KDL Medical Enterprises, Inc./MBS International, Inc. and obtained $400,000 with which to fund its Plan, which sum was secured by a perfected security interest in all assets of the Debtor. Pursuant to the terms of the Plan, the Trustee paid all undisputed administrative and priority clams in full and paid the unsecured creditors a dividend of approximately 14%. The Debtor had no other payment obligations to its creditors except as set forth at Paragraph 3.3 of its Plan, which provides the following:

> If the Debtor is sold (asset or stock sale) within two years of the Effective Date [i.e., October 15, 2003], creditors shall be paid in full unless the Disbursing Agent, at her sole discretion, agrees otherwise. To secure the sale obligation, the Debtor shall grant the Disbursing Agent a security interest in all of the assets of the Debtor junior only to (1) properly perfected security interest securing the loan in the original principal amount of $400,000 KDL loan, and (2) up to $500,000 working capital SBA guaranteed loan or loan from any major institutional lender. . . . Notwithstanding anything to the contrary, the Debtor shall have the ability to sell un-issued treasury stock, which represents 12% of the debtor's current issued stock.

Article VIII of the Plan, captioned "Retention of Jurisdiction," contained the following provisions:

> The Court retains jurisdiction
>
> A. To adjudicate and determine any and all proceedings which the Debtor or Disbursing Agent may bring prior to or after confirmation to set aside security interests, liens or encumbrances, or to avoid or recover any preferences, fraudulent conveyances or obligations, or other obligations or transfers voidable under applicable provisions of the Bankruptcy Code or other federal or state law.

3

B. To determine any and all controversies concerning the classification or allowance of any claim.

C. To determine any and all applications of professional persons for allowance of compensation or reimbursement of expenses.

D. To hear and determine all motions pending on the Confirmation Date, including any motions to assume or reject certain executory contracts and unexpired leases, to hear and determine all claims or controversies arising from the assumption or rejection of any executory contracts or unexpired leases and to consummate the assumption or rejection thereof.

E. To determine all motions, adversary proceedings and litigated maters [sic] pending on the Confirmation Date or filed thereafter within any applicable statutory period.

F. To adjudicate all claims or controversies to a security or ownership interesting [sic] any property of the Debtor or in any proceeds thereof.

G. To determine or estimate damages in connection with any disputed contingent or unliquidated claim.

H. To recover all assets or property of the Debtor, wherever located.

I. To enter such orders as are necessary or appropriate to carry out the provisions of the Plan.

J. To determine such other matters and for such other purposes as may be provided for in the Confirmation [sic] Plan.

K. To provide for the modification of the Plan.

At the confirmation hearing, the parties entered into a Confirmation Agreement. It set forth terms with respect to a so-called PCT patent regarding the Debtor's sales of its current technology, Safety-Tip needle products, and it provided that GTI was to receive a two cent per unit discount on the purchase of all products sold in countries covered by the PCT. It provided that "the escrow account shall be established by October 31, 2003 and

funded in the initial amount of $100,000." It further provided:

> Up to $75,000 of the escrow account may be used toward paying the balance due on the Major Order. After the Major Order is paid for the escrow account shall be maintained in the minimum amount of $50,000, except that payments from it may be made for inventory or minimum royalty payments which reduce it below the minimum (But not below $25,000) so long as they are replenished within 21 days thereafter. It is further agreed that GTI shall be entitled to only thirty days written notice of a payment default on payments due after confirmation of the Plan.
>
> The Order confirming the Plan shall provided that any and all claims by GTI resulting from the failure of SMSI to have a PCT patent shall not be discharged by confirmation but shall survive.

As noted above, the Court confirmed the Debtor's Plan on September 30, 2003. The Confirmation Order granted the Trustee in her role as Disbursing Agent "a perfected security interest to secure the sale obligation, without the necessity of filing at the Secretary of the Commonwealth, in all of the assets of the debtor junior only to 1) a security interest provided to Guardian Tech. Inc. pursuant to the Supplemental Settlement Agreement Dated June 3, 2003 [sic] 2) security interest securing a loan in the original principal amount of 4400,000 from KDL Medical Enterprises, Inc./MBS International, Inc. or other approved lender satisfactory to the Trustee and 3) up to $500,000 working capital SBA guaranteed loan or loan from any major institutional lender. . . ."

Approximately fourteen months after obtaining confirmation of its Plan, SMSI, on December 7, 2004, commenced the above-captioned adversary proceeding against the Defendants. In its Complaint for Declaratory Judgment, it stated that the purpose of the security interest granted to GTI was to secure the delivery of the initial inventory order and that GTI was required to establish an escrow account to be used <u>solely</u> for product

5

purchases and minimum royalty payments to SMSI. Moreover, it stated that it filed an "Affidavit of Noncompliance and Termination of the License Agreement Between Safety Medical Supply International, Inc and ReTrac Medical Inc. now known as Guardian Tech Inc.," which was required pursuant to the terms of the Supplemental Settlement Agreement and Confirmation Agreement, both of which it stated were approved by the Court. It added that it made demand upon the Disbursing Agent to record or turn over the discharge the security agreement granted to GTI, an action which it alleged the Disbursing Agent has failed to perform.

Through its Complaint, SMSI also requested the Court to declare that the Affidavit of Noncompliance and Termination of the License Agreement was appropriately filed in this Court; to order the Disbursing Agent to record the discharge of the security agreement regarding the intellectual property of SMSI; to order B&L to fund $45,000 into the escrow account, representing funds which were allegedly used to satisfy outstanding legal fees; and to find that GTI no longer has rights pursuant to the Confirmation Order.

The Disbursing Agent filed an Answer, and the Defendants filed Answers and Counterclaims. In particular, GTI alleged that SMSI failed to timely produce and deliver products and intentionally engaged in efforts to squeeze GTI out as the middle man between SMSI and GTI's principal customer. In its Counterclaim, it formulated nine counts, including breach of contract, breach of the covenant of good faith and fair dealings, tortious interference with advantageous business relations, misrepresentation, and violation of Mass. Gen. Laws c. 93A, § 11.

6

At the present time, SMSI's "Motion to Strike Affirmative Defenses and Jury Claim to the Extent that the Affirmative Defenses Suggest that the Bankruptcy Court Lacks Jurisdiction or the Authority to Enter Final Judgment or to Adjudicate the Issues Raised in the Plaintiffs [sic] for Declaratory Judgment" is pending, as well as a Cross Motion for Summary Judgment filed by B&L, and other motions. Their resolution depends upon this Court's ruling on the Defendants' Joint Motion to Dismiss.

## II. DISCUSSION

This adversary proceeding raises the issue of whether this Court has jurisdiction over SMSI's post-confirmation claims against the Defendants. Although the contractual relationship between SMSI and GTI had its genesis prior to confirmation of the Debtor's Plan, the contractual breaches now alleged by SMSI and GTI occurred after the Plan was substantially consummated. Indeed, absent the Plan provision set forth in Paragraph 3.3 providing for further payments to unsecured creditors upon a sale of either the stock or assets of the Debtor prior to October 15, 2005, unsecured creditors will not benefit from any recovery SMSI might obtain from GTI. Accordingly, the instant case is distinguishable from <u>Gray v. Polar Molecular Corp. (In re Polar Molecular Corp.)</u>, 195 B.R. 548 (Bankr. D. Mass. 1996), a case in which the Chapter 11 trustee brought an action to compel the reorganized debtor to remit income generated post-confirmation for distribution to unsecured creditors.

In its Complaint, SMSI has not alleged that it intends to sell its stock or assets or even hinted at the possibility of a sale. Nevertheless, it is conceivable that the recordation

of the discharge of the security interest SMSI granted to GTI might increase the potential value of its assets. Thus, this Court concludes that it has "related to" jurisdiction with respect to the adversary proceeding until October 15, 2005, at which time the provision set forth in Paragraph 3.3 for the benefit of the unsecured creditors expire. *See* 28 U.S.C. § 1334(b). At that point, the dispute among the parties will have no effect on the administration of the bankruptcy estate. *See* Boston Regional Medical Center, Inc. v. First Lutheran Church (In re Boston Regional Medical Center, Inc., 410 F.3d 100, 105 (1st Cir. 2005)(citing Pacor, Inc. v. Higgins, 734 F.2d 984, 994 (3d Cir. 1984), and In re G.S. F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991)).

In Boston Regional, the First Circuit stated:

On its face, section 1334 does not distinguish between pre-confirmation and post-confirmation jurisdiction. Nonetheless, courts sometimes have found a need to curtail the reach of related to jurisdiction in the post-confirmation context so that bankruptcy court jurisdiction does not continue indefinitely. *See, e.g.,* In re Pegasus Gold Corp., 394 F.3d 1189, 1193-94 (9th Cir. 2005) (suggesting that post-confirmation bankruptcy court jurisdiction is necessarily more limited than pre-confirmation jurisdiction); In re Resorts Int'l, Inc., 372 F.3d 154, 164-69 (3d Cir. 2004) (similar).

The rationale behind this line of decisions starts with the premise that a reorganized debtor is emancipated by the confirmation of a reorganization plan. It emerges from bankruptcy and enters the marketplace in its reincarnated form. From that point forward, it is just like any other corporation; "it must protect its interests in the way provided by the applicable non-bankruptcy law," without any special swaddling. Pettibone Corp. v. Easley, 935 F.2d 120, 122-23 (7th Cir. 1991). Given the broad sweep of related to jurisdiction, applying the general rule without qualification after the confirmation of a reorganization plan easily could result in the bankruptcy court retaining jurisdiction of all cases affecting the reorganized debtor for many years thereafter. This prospect not only would work an unwarranted expansion of federal court jurisdiction but also would unfairly advantage reorganized debtors by allowing such firms to funnel virtually all

8

litigation affecting them into a single federal forum. *See* id. at 122.

The solution, however, is not to discard the baby with the bath water. While courts have interpreted the term "related to" more grudgingly in some post-confirmation settings, context is important. Those narrowing interpretations have been invoked only with respect to actions involving reorganized debtors that have reentered the marketplace. No case has suggested that courts should abandon the general rule in all post-confirmation cases. . . .

Courts that have limited the scope of post-confirmation jurisdiction have based their holdings on the conclusion that, once confirmation has occurred, fewer proceedings are actually related to the underlying bankruptcy case. *See, e.g.*, Resorts Int'l, 372 F.3d at 165-67; In re Craig's Stores of Tex., Inc., 266 F.3d 388, 390 (5th Cir. 2001). That makes good sense: as the corporation moves on, the connection attenuates.

This justification is absent in the case of a liquidating plan. Typically, a reorganized debtor is attempting to make a go of its business. Thus, its actions (including any involvement in litigation) redound primarily to that end and only affect the underlying bankruptcy proceeding in a tangential or derivative way. *See* Pettibone, 935 F.2d at 122-23. By contrast, a liquidating debtor exists for the singular purpose of executing an order of the bankruptcy court. Any litigation involving such a debtor thus relates much more directly to a proceeding under title 11. . . .

The existence vel non of related to jurisdiction must be determined case-by-case. *See* Pegasus Gold, 394 F.3d at 1194 (recognizing that post-confirmation related to jurisdiction should be determined with "a certain flexibility"). The language of the jurisdictional statute, 28 U.S.C. § 1334, is protean, and what is "related to" a proceeding under title 11 in one context may be unrelated in another. With this in mind, we feel confident that there will be situations in which the fact that particular litigation arises after confirmation of a reorganization plan will defeat an attempted exercise of bankruptcy jurisdiction. *See, e.g.*, Resorts Int'l, 372 F.3d at 166-68. We are equally confident, however, that there are other situations in which the fact that particular litigation arises after confirmation of a reorganization plan will not defeat an attempted exercise of bankruptcy jurisdiction.

410 F.3d at 106 -107.

Based upon the rationale articulated by the First Circuit quoted above, this Court

concludes that its "related to" jurisdiction, which is attenuated now, and will not exist after October 15, 2005. In view of the contentious nature of the dispute between SMSI and the Defendants, a dispute involving only state law claims which likely will require significant discovery, this Court cannot enter the declaratory judgment requested by SMSI prior to October 15, 2005.

With respect to the Defendants' request for abstention, the Court finds that it is warranted. The factors with respect to discretionary abstention articulated in Southern Marine and Indus. Servs., Inc. v. AK Engineering, Inc. (In re AK Servs., Inc.), 159 B.R. 76, 80 (Bankr. D. Mass. 1993), weigh in favor of the Defendants. These factors include the following:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of . . . [the] . . . docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

159 B.R. at 80-81 (citing In re Republic Reader's Serv., Inc., 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987)(footnote omitted). As note above, the dispute does not affect the efficient administration of the bankruptcy estate; only state law issues are present; applicable law is not unsettled; there are no related proceedings in other courts; there is no jurisdictional

basis for the instant suit other than "related to" jurisdiction under 28 U.S.C. § 1334(b); the dispute is unrelated to the main bankruptcy case, as creditors have been paid in accordance with the Debtor's Plan and will receive no further distributions absent a sale of the Debtor's assets or stock before mid-October, 2005; the matter does not fall within the bankruptcy court's "core" jurisdiction; the substantive issues raised by the Declaratory Judgment Complaint involve contract interpretation which can be adjudicated in the state court; the Defendants have demanded a jury trial, and this Court, even if it were to retain jurisdiction through the completion of discovery, could not try the matter without the consent of SMSI. In short, analysis of the factors articulated in AK Services compels a decision to abstain.

## III. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Defendants' Motion to Dismiss on the alternative ground set forth therein.

By the Court

*[signature]*
Joan N. Feeney
United States Bankruptcy Judge

Dated: July 13, 2005
cc: William Sopp, Esq., Samuel M. Pollack, Esq., Kathleen P. Dwyer, Esq., U.S. Trustee

11